**COLUMBIA TOWNSHIP BOARD OF ZONING APPEALS, Appellant,**

v.

**OTIS, Appellee.**

[Cite as *Columbia Twp. Bd. of Zoning Appeals v. Otis* (1995), 104 Ohio App.3d 756.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 94CA005937.

Decided June 21, 1995.

*Gerald Innes,* for appellant.

*Frank Groh–Wargo,* for appellee.

REECE, Judge.

Appellant, Columbia Township Board of Zoning Appeals ("board"), appeals the judgment of the Lorain County Court of Common Pleas which reversed the board's decision denying the appeal of appellee, Darlene Otis. We reverse the court's decision as it relates to the haunted hayrides.

Otis owns and operates a twenty-three-acre farm in Columbia Township on which she boards horses, breeds rabbits, grows hay for the horses, and offers pony rides. Her property is zoned R–3 residential. In the fall of 1990, Otis began offering hayrides to the general public, similar to those offered on other farms in the area. The twenty- to twenty-five minute hayride would take visitors around Otis's field and through the woods. Otis later incorporated Halloween and Christmas themes to the hayrides through the installation of a sound system and lights in the woods. The Halloween theme included flashing lights, amplified horror sounds, and actors dressed in Halloween costumes. The Christmas theme included music and Christmas lights. Before and after the hayrides, Otis provided part of her barn as a lounge area, which included vending and game machines. At one time Otis also prepared and sold hot dogs and coffee.

The Halloween "haunted hayrides" became the primary focus of this dispute. The township apparently became involved after several of Otis's neighbors complained about the noise. In October 1990, because Otis was operating a business in a residential area, the zoning inspector issued a "Notice of Zoning Violation" to Otis, and ordered her to cease and desist "all business activities related to selling of food and haunted forest activities." Recognizing that the township's power to regulate any agriculture use of Otis's property was restricted by R.C. 519.21, the zoning inspector sought a legal opinion from the office of the Lorain County Prosecuting Attorney. An assistant prosecutor opined that hayrides and pony rides are generally agricultural uses of property.

On December 19, 1990, because Otis had failed to comply with the cease and desist order, she was cited for operating a food booth and a haunted forest in a residential district. In a letter dated February 14, 1991, Otis requested that the city prosecutor dismiss the charges because the "incident" was part of a one-time festival. Otis further explained that she planned to cooperate with the zoning inspector regarding any future questionable use of her property. Consequently, the prosecutor's office dismissed the zoning citation.

During the next two years, however, the zoning inspector and township trustees continued to receive noise complaints from Otis's neighbors. On December 2, 1992, the trustees again sought a legal opinion, this time from a private attorney, about the agricultural status of Otis's pony rides and hayrides. This

attorney did not believe that hayrides or pony rides were agricultural uses within the meaning of R.C. 519.21.

In a notice dated January 13, 1993, Otis was ordered to cease and desist "all business activities," which included the pony rides, hayrides and picnic area, and to remove all signs not in compliance with the zoning code. Otis appealed to the board which upheld the cease and desist order as it related to the business activity. In a separate entry, the board upheld the cease and desist order regarding the signs. Otis appealed only the first entry to the Lorain County Court of Common Pleas. The court reversed the board, concluding that despite the addition of the Halloween theme, Otis's pony rides and hayrides were an agricultural use of her property which could not be prohibited by the township.

The board appeals, and raises two assignments of error relating solely to the haunted hayrides, which shall be addressed together.

The board's assignments of error assert that the trial court erred in finding that the board's decision was arbitrary and not supported by a preponderance of substantial, reliable, and probative evidence. This court's standard of review is found in *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 30, 465 N.E.2d 848, 852:

"In an R.C. Chapter 2506 administrative appeal of a decision of the board of zoning appeals to the common pleas court, the court, pursuant to R.C. 2506.04, may reverse the board if it finds that the board's decision is not supported by a preponderance of reliable, probative and substantial evidence. An appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope and requires that court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence."

The parties agree that the only issue presented in this appeal is whether the township's power to prohibit the haunted hayrides was restricted by R.C. 519.21(A), which provides:

"[S]ections 519.02 to 519.25 of the Revised Code confer no power on any township zoning commission, board of township trustees, or board of zoning appeals to prohibit the use of any land for agricultural purposes[.]"

Specifically, we must determine whether the haunted hayrides constituted the use of land for an agricultural purpose.

It is the board's position that Otis had transformed the hayride into a nonagricultural activity through the addition of a sound system, flashing lights and Halloween actors in the woods, by installing game machines in the barn, and by selling vending machine food rather than farm produce.

Otis argues that the hayrides are agricultural because R.C. 519.21 has given the term "agriculture" a broad definition, and courts have interpreted the definition to include recreational pursuits. See *Mentor Lagoons, Inc. v. Mentor Twp. Bd. of Zoning Appeals* (1958), 168 Ohio St. 113, 5 O.O.2d 372, 151 N.E.2d 533.

The parties do not dispute that basic hayrides probably fall within the definition of agricultural use. Even if we assume that Otis's original hayrides constituted an agricultural use of her property, however, there came a point at which the activity evolved into something which could no longer fall within the definition of "agricultural," as it was completely inconsistent with her neighbors' use of their property to train and raise horses, an activity which falls squarely within the definition of agricultural. See R.C. 519.01; *Mentor Lagoons, supra,* at paragraph three of the syllabus; *Atwater Twp. v. Demczyk* (1991), 72 Ohio App.3d 763, 767, 596 N.E.2d 498, 500.

Several of Otis's neighbors testified that they were disturbed by the loud noises coming from Otis's farm, sometimes lasting until 1:30 or 2:00 a.m. The complaining landowners included more than Otis's immediate neighbors. Apparently the noise traveled far enough to disturb several farms in the area. A veterinarian and horse trainer testified that his horses were frightened by the shrieking noises and the flashing lights, which shone into his training barn. Another horse owner testified that the sound and music scared his horses to such an extent that two of his horses ran through a fence to escape the noise. Some of his horses will no longer go to certain areas of his property due to their fear of the noise.

The shrieks and flashing lights from Otis's farm were completely inconsistent with traditional agricultural activity. Therefore, the haunted hayride could not be considered the use of property for an agricultural purpose. The trial court's decision to reverse the board on the hayride issue was not supported by a preponderance of reliable, probative, and substantial evidence. The assignments of error are sustained.

The judgment of the common pleas court is reversed as it relates to the haunted hayrides, and the board's decision on that issue is reinstated.

*Judgment accordingly.*

QUILLIN, P.J., and SLABY, J., concur.